**SIGNED this 21 day of May, 2009.**

_____

**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| THE GREAT SPA MANUFACTURING COMPANY, INC. d/b/a INFINITY SPAS, | No. 08-52293 Chapter 11 |
| Debtor. | |
| THE GREAT SPA MANUFACTURING COMPANY, INC. d/b/a INFINITY SPAS, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 09-5009 |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant. | |

### M E M O R A N D U M

Appearances:

| | |
|---|---|
| Steven A. Riley, Esq. | Tyler C. Huskey, Esq. |
| Riley Warnock & Jacobson, PLLC | Gentry, Tipton & McLemore, P.C. |
| 1906 West End Avenue | Post Office Box 1990 |
| Nashville, TN 37203 | Knoxville, TN 37901 |
| *Attorney for Costco Wholesale Corp.* | *Attorney for The Great Spa Manufacturing Co.* |

**Marcia Phillips Parsons, United States Bankruptcy Judge**.  This adversary proceeding is before the court on the motion of the defendant to compel arbitration and to stay this proceeding pending the arbitration.   As discussed hereafter, the motion will be granted.   This is a core proceeding. *See* 28 U.S.C. 157(b)(2)(O).

I.

On November 19, 2008, The Great Spa Manufacturing Company, Inc. d/b/a Infinity Spas filed a voluntary petition for bankruptcy relief under  chapter 11 and is currently operating as a debtor in possession. On February 20, 2009, the Debtor commenced the instant adversary proceeding against Costco Wholesale Corporation.  The Debtor alleges in the complaint that prior to the filing of its bankruptcy petition Costco owed the Debtor the sum of $1,591,391.70 because of goods and services provided by the Debtor to Costco and seeks a judgment in that amount.

Rather than answering the complaint, Costco responded by filing a motion to compel arbitration and to stay this adversary proceeding on March 26, 2009. Costco states in the memorandum filed in support of the motion that Costco and the Debtor are parties to the costco.com Drop-Ship Vendor Agreement ("Drop-Ship Agreement") dated October 22, 2006, and the Costco Wholesale Basic Vendor Agreement ("Basic Agreement") dated November 15, 2007, copies of which are attached to the Declaration of Shelly Bucklin, an assistant general merchandise manager at Costco.  According to Costco, the Drop-Ship Agreement contemplates that Costco's customers would purchase Debtor's merchandise through the internet websites of Costco or its affiliates, with Costco purchasing the merchandise from the Debtor and the Debtor then delivering the merchandise directly to the customer. *See id.*  The Basic Agreement similarly provides for purchases by Costco, but calls for deliveries of the Debtor's merchandise to Costco's warehouses and depots.  Both agreements incorporate certain terms and conditions, with the terms for the Drop-Ship Agreement referred to as the "Drop-Ship Terms" and the terms for the Basic Agreement called "Standard Terms."

Costco asserts that the Debtor agreed as set forth in these contracts to submit any claim or dispute between the parties to arbitration.  Specifically, the Drop-Ship Agreement states in paragraph 5 that "[d]isputes shall be resolved as provided in Sections 32, 33 and 34 of the [Drop-Ship Terms]." In turn, Section 32 provides in part the following:

32. **Disputes and Arbitration:** All claims and disputes that (a) are between [Debtor] and costco.com or either's subsidiaries, parents, affiliates, officers, directors and/or their employees, and (b) arise out of or relate to the Agreement Documents or their subject matter, interpretation, performance or enforcement, or any other agreement, transaction or occurrence between [Debtor] and costo.com (including without limitation any tort or statutory claim) ("Dispute"), shall be arbitrated under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in English at Seattle, Washington, before one neutral arbitrator who may be a national of any party and who shall be a member of the AAA's Large Complex Case Panel.

Section 33 of the Drop-Ship Terms provides that the Vendor, which is identified as the Debtor in the first paragraph of the Drop-Ship Agreement, consents to the personal jurisdiction and venue of the federal and state courts in King County, Washington.  Section 34 states that all agreements between the Vendor and Costco shall be governed by and construed according to the laws of the state of Washington.  The Basic Agreement and its Standard Terms contain nearly identical provisions. *See Standard Terms* § 20, 21, 22.

Costco alleges that the Debtor's claims against it set forth in the complaint fall squarely within the scope of the arbitration clauses.  As such, Costco asserts that this court is required by the Federal Arbitration Act, specifically, 9 U.S.C. §§ 2 and 3, to enforce the parties' arbitration agreements by staying the proceeding until arbitration has been conducted.  Citing *Hays and Co. v. Merrill Lynch., Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989), Costco also asserts that this court lacks the discretion to deny its motion because this adversary is a non-core proceeding.

 In response, the Debtor asserts that it is not clear from the record as to how much Costco owes under each agreement but that the Basic Agreement is not enforceable against the Debtor because it was not signed by Costco.  As to claims governed by the Drop-Ship Agreement, the Debtor argues that it would have to spend significant resources to arbitrate in the state of Washington, and that it would be more efficient for this court to resolve these disputes in connection with its resolution of the disputes that would otherwise fall under the Basic Agreement.  Finally, the Debtor denies that this action is non-core and argues to the contrary that it is core.

In reply, Costco counters that under both Tennessee and Washington state law, the Basic Agreement is enforceable against the Debtor, notwithstanding that it is unsigned by Costco. Regarding the Debtor's cost and efficiency argument, Costco denies that arbitration is more costly

and alternatively responds that the argument is irrelevant because the Debtor agreed to arbitration. Lastly, Costco continues to maintain the non-core nature of this proceeding.

II.

The Sixth Circuit Court of Appeals has explained that under the Federal Arbitration Act, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exits at law or in equity for the revocation of any contract.'" *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2). Intended to "reverse centuries of judicial hostility to arbitration agreements," the Arbitration Act "establishes a federal policy favoring arbitration, requiring that 'we rigorously enforce agreements to arbitrate.'" *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26, 107 S. Ct. 2332, 2337 (citations omitted) (1987). "To enforce this dictate, the Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch*, 315 F.3d at 624 (citing 9 U.S.C. §§ 3 and 4).

> According to the Sixth Circuit:
>
> Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement. *See AT & T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

*Javitch*, 315 F.3d at 624.

Applying this analysis to the case at hand, the first inquiry is whether "a valid agreement to arbitrate exists between the parties." *Id.* In this regard, the Debtor does not deny that the Drop-Ship Agreement with its arbitration clause constitutes a valid agreement between the parties. As to the Basic Agreement, however, the Debtor asserts that it is not binding because it was not signed by Costco. The Debtor cites no authority for this proposition, and it is incorrect as a general proposition under either Washington or Tennessee state law. Under Washington law, the existence of a contract

4

is determined by mutual assent to its essential terms and the existence of mutual assent may be deduced from the circumstances, including the ordinary course of dealing between the parties; signatures of the parties are not essential to the determination. *Jacob's Meadow Owners Assoc. v. Plateau 44 II, LLC*, 162 P.3d 1153, 1165-66 (Wash. App. 2007).  Similarly, under Tennessee law, a written contract does not have to be signed to be binding on the parties, even if the contract sought to be enforced contains an arbitration clause. *T.R. Mills Contractors, Inc. v. WRH Enters. LLC*, 93 S.W.3d 861, 865-870 (Tenn. App. 2002).  Rather, "[w]hat is critical is mutual assent to be bound.  In determining mutuality of assent, courts use an objective standard based on the manifestations of the parties. . . . Assent can be established by the course of dealing of the parties. . . . [T]he court also can consider relevant evidence such as whether the parties performed under its terms." *Id.*

On the issue of mutual assent to be bound, Costco states in its reply that there have been more than 9000 sale transactions between the parties during the last few years, each of which was documented by Costco's standard purchase order which expressly incorporates the Standard Terms.  From this statement, which is supported by the Second Declaration of Shelly Bucklin and unrefuted by the Debtor, it can be logically inferred that the parties' course of conduct and performance evidence their agreement to be mutually bound by the Standard Terms. Moreover, it must be emphasized that the Debtor does not deny that it signed the Basic Agreement and agreed to be bound by all of its terms, including the arbitration provision.  Accordingly, the court concludes that valid agreements to arbitrate exist between the parties, even though one of the agreements is unsigned by Costco.

With respect to the second component of the arbitration inquiry, whether the specific dispute falls within the substantive scope of the arbitration agreements, the Debtor does not appear to deny this aspect.  In the complaint, the Debtor seeks payment for sales that it made to Costco and its customers.  Both the Basic Agreement and the Drop-Ship Agreement provide that "[a]ll sales and deliveries of all Merchandise by [Debtor] to [Costco and its customers] . . . will be covered by and subject to the [Drop-Ship Terms and Standard Terms] . . . ."  Each agreement expressly states that "disputes shall be resolved" by reference to the specific section in the terms that pertain to arbitration.  And, the arbitration clauses themselves expressly encompass "all claims and disputes" between the Debtor and Costco that "arise out of or relate to [the agreements] or their subject matter,

interpretation, performance or enforcement . . . ."  Therefore, it is clear that the claims of the Debtor set forth in the complaint fall within the substantive scope of the parties' arbitration agreements.

Based on the foregoing analysis, it would appear that the parties' arbitration agreements are enforceable and that this court should compel arbitration as requested by Costco, unless the Debtor's bankruptcy filing has any impact on the arbitration decision.  It has been observed that the Federal Arbitration Act, "which takes disputes out of the judicial system, conflicts with the policy and efficiency of centralization of dispute resolution in bankruptcy cases, which is the hallmark of the bankruptcy jurisdictional scheme." Alan N. Resnick, *The Enforceability of Arbitration Clauses in Bankruptcy*, 15 Am. Bankr. Inst. L. Rev. 183, 200 (2007).  Recognizing that the mandate in the Arbitration Act to enforce arbitration agreements, like any statutory directive, may be overridden by a contrary congressional command, the Supreme Court has instructed that when enforcement of the Federal Arbitration Act arguably clashes with another federal statute, "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 227.  Congressional intent to create an exception to the Arbitration Act is to be discerned from the conflicting statute's "text or legislative history . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.*

Four circuit courts of appeals, the Second, Third, Fourth, and Fifth, have utilized the *McMahon* framework to determine whether the Arbitration Act conflicts with the Bankruptcy Code. *See MBNA Am. Bank v. Hill,* 436 F.3d 104 (2d Cir. 2006); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222 (3rd Cir. 2006); *Phillips v. Mowbray, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164 (4th Cir. 2005); *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489 (5th Cir. 2002); *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160 (2d Cir. 2000); *U.S. Lines, Inc. v. Am. Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631 (2d Cir. 1999); *Matter of National Gysum Co.*, 118 F.3d 1056 (5th Cir. 1997); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989).  The first of these cases to be decided, the *Hays* decision by the Third Circuit, is most analogous to the case at hand.  In *Hays*, a chapter 11 trustee had commenced an action against a securities broker for prepetition claims under various state and federal securities laws, as well as fraudulent conveyance and constructive trust claims under the trustee's powers pursuant to § 544(b)

of the Bankruptcy Code.  The defendant broker moved to compel arbitration based on the arbitration clause in the customer agreement between the debtor and the broker.   Although the district court denied the motion in its entirety, the court of appeals held that the "the trustee-plaintiff stands in the shoes of the debtor for purposes of [an] arbitration clause." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,  885 F.2d at 1153.  Thus, as to the trustee's claims under § 544 that were not derivative of the debtor, the trustee was not bound by the arbitration agreement between the debtor and the broker.  However, as to the prepetition claims brought by the trustee as successor to the debtor's interest, which the court concluded were non-core, the trustee was bound as the debtor would have been.  *Id.* at 1153-54.

Moreover, the court of appeals found nothing in the text, legislative history or underlying purposes of the Bankruptcy Code that would compel a contrary result.  *Id*. at 1157-58.  The court noted that even if there was some potential that enforcing the arbitration agreement would have an adverse impact on the underlying bankruptcy case, such as inefficient delay, duplicative proceedings, or collateral estoppel effect, the party opposing arbitration had not shown that it would be substantial enough to override the policy favoring arbitration.  *Id.* at 1158 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238 (1985) ("[T]he Arbitration Act requires district court to compel arbitration of pendent arbitrable claims . . . , even where the result would be the possible inefficient maintenance of separate proceedings in separate forums.")).  Accordingly, the court of appeals concluded in *Hays* that the district court lacked the authority and discretion to deny enforcement of a valid arbitration clause in a non-core proceeding brought by a trustee to enforce a claim of the estate.  *Id.* at 1161 ("Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration - certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act . . . .").  *See also Matter of National Gysum Co.*, 118 F.3d at 1068  (*Hays* "makes eminent sense" and has been "universally accepted" with respect to "derivative, non-core matters.").

Subsequently in *Mintze*, the Third Circuit Court of Appeals clarified that the *Hays* analysis is not limited to non-core proceedings.  *In re Mintze*, 434 F.3d at 230.  Rather, the critical distinction is between causes of action derived from the debtor and bankruptcy actions that the Bankruptcy Code

created for the benefit of the creditors of the estate. *Id.* With respect to the former which present no inherent conflict with the Bankruptcy Code, the Third Circuit held that the bankruptcy court lacked the discretion to deny enforcement of the arbitration clause. *Id.* at 231-32. *See also Matter of National Gypsum Co.,* 118 F.3d at 1067 ("[W]e believe that nonenforcement of an otherwise applicable arbitration provisions turns on the underlying nature of the proceeding, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the Code.").

The Sixth Circuit Court of Appeals has not precisely addressed the Federal Arbitration Act in the context of a bankruptcy case. However, the court has discussed *Hays* and followed a similar analysis in a receivership context. *See Javitch v. First Union Securities, Inc.*, 315 F.3d at 625. In *Javitch,* a receiver for two insolvent business entities brought an action for fraud, negligence, and conversion against certain brokerage firms and brokers that had invested the entities' monies. The defendants moved for an order compelling arbitration and for a stay of the proceedings based on the customer agreements containing broad provisions for mandatory arbitration of disputes that the business entities had signed. Although the district court denied the motions to compel, the court of appeals concluded that the receiver, who was bringing the claims on behalf of the business entities, was "bound to the arbitration agreements to the same extent that the receivership entities would have been absent the appointment of the receiver." *Id.* at 627.

Based on *Javitch*, one district court in this circuit has concluded that the Sixth Circuit Court of Appeals would follow *Hays*. *See Cooker Rest. Corp. v. Seelbinder (In re Cooker Rest. Corp.)*, 292 B.R. 308 (S.D. Ohio 2003). In *Cooker Restaurant*, the chapter 11 debtor brought an adversary proceeding to recover sums allegedly owed under a prepetition settlement agreement. The defendants moved to stay the proceeding and to compel arbitration in accordance with an arbitration clause in the settlement agreement. The bankruptcy court denied the motion, but upon appeal the district court reversed, observing that the courts have generally enforced arbitration clauses in non-core proceedings. Although the court was sympathetic to concerns that the debtor's reorganization take place in the most efficient manner possible, the court concluded that these concerns were overridden by the mandate in the Federal Arbitration Act that the court enforce valid arbitration agreements. *Id.* at 312. And, in cases prior to *Javitch,* bankruptcy courts in this circuit have reached similar results,

relying in part on the *Hays* analysis. *See In re Transport Assoc., Inc.*, 263 B.R. 531 (Bankr. W.D. Ky. 2001) (concluding that no underlying purpose of the Bankruptcy Code would be seriously and adversely affected by enforcing the arbitration clause, the court held that the trustee, standing in the shoes of the debtor, a party to the mutually agreed-upon arbitration clause, must proceed to arbitrate the contractual dispute); *Pelikan Holding AG v. Nu-Kote Holding, Inc. (In re Nu-Kote Holding, Inc.)*, 257 B.R. 855 (Bankr. M.D. Tenn. 2001) (arbitration provision was enforceable because none of claims or defenses were created by the Bankruptcy Code and because the chapter 11 debtor failed to carry its burden to demonstrate substantial bankruptcy interests that would overcome enforcement of prepetition arbitration agreement); *James P. Barkman, Inc. v. Granger Constr. Co. (In re James P. Barkman, Inc.),* 170 B.R. 321 (Bankr. E.D. Mich. 1994) (arbitration agreement was enforceable against chapter 11 debtor in possession that failed to establish conflict with text, legislative history or purpose of Bankruptcy Code).

This court finds the foregoing cases persuasive. Regardless of whether this action is core or non-core, it is undisputed, as counsel for the Debtor conceded at oral argument on this motion, that the Debtor's cause of action is not derived from any provision of the Bankruptcy Code. Thus, no inherent conflict between the Bankruptcy Code and the Federal Arbitration Act is presented. In bringing this action to recover prepetition accounts, the Debtor is bound by its arbitration agreements, just as it would have been had this bankruptcy case not been filed.

In this regard, the court agrees that the determinative inquiry in enforcing an arbitration provision is the source of the Debtor's cause of action, rather than the core/non-core jurisdictional distinction. However, to the extent this distinction is relevant, the court concludes that this proceeding is non-core. It does not invoke a substantive right provided by title 11; nor is it a proceeding that, by its nature, could only arise in the context of a bankruptcy case. Rather, this action is simply a prepetition contract dispute that presumably would have been brought in state court but for the Debtor's bankruptcy filing. *See Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). "[I]t is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b) . . . ." *In re Gandy*, 299 F.3d at 495; *see also In re Crysen/Montenay Energy Co.,* 226 F.3d at 165 ("[T]he presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in

9

adjudicating non-core proceedings that could otherwise be arbitrated"); *In re U.S. Lines, Inc.*, 197 F.3d at 640 (noting that a conflict between the Arbitration Act and the Bankruptcy Code "is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration"); Resnick, *The Enforceability of Arbitration Clauses in Bankruptcy*, 15 Am. Bankr. Inst. L. Rev. at 218 ("In contrast to core proceedings, there usually is no rationale basis for nullifying arbitration agreements in connection with non-core proceedings."). While this court is sympathetic to the Debtor's concerns regarding cost and efficiency, it is nonetheless compelled by the Federal Arbitration Act to enforce the parties' arbitration agreements.

III.

Based on the foregoing, an order will be entered granting Costco's motion to compel arbitration and to stay this adversary proceeding.

# # #